**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.   1:19-cv-00651-STV

Trenson L Byrd

      Plaintiff,

v.

GMAC MORTGAGE, LLC,
OCWEN LOAN SERVICING, LLC, and
LIBERTY ASSET MANAGEMENT, LLC.

      Defendants,

---

**PLAINTIFF'S RESPONSE TO GMAC'S RULE 12(b)(6) MOTION TO DISMISS AND MOTION TO FILE A SECOND AMENDED COMPLAINT TO INCORPORATE AFFIDAVIT OF PLAINTIFF AND EXHIBITS**

---

Trenson L Byrd ("Byrd"), by and through counsel, Webb Law Group, LLC, files this response Rule 12(b)(6) Motion to Dismiss and request to file a second amended complaint to incorporate Byrd's affidavit and attached exhibits. In support of this motion, Byrd states the following:

## CERTIFICATE OF COMPLIANCE

Pursuant to D.C.COLO.LCivR 7.1 the undersigned certifies that he conferred with counsel for GMAC Mortgage. LLC and Ocwen Loan Servicing, LLC regarding Byrd's request to file a second amended complaint to add Byrd's affidavit and exhibits. Defendant's counsel opposes Byrd's request to file a second amended complaint.

## I.  BRIEF SUMMARY

GMAC challenges Byrd's causes of action arising under the (i) violation of the Fair Credit Reporting Act1 ("FCRA") and (ii) violation of the Right to Financial Privacy Act, 12 U.S.C. § 3401 ("RFPA"). As set forth below, Byrd seeks to Amend it Complaint to incorporate Byrd's affidavit and exhibits. A copy of which is attached hereto and incorporated herein by this reference as **Exhibit 1**. The Byrd claims are not time-barred under the applicable statute of limitations because there was communication between the Byrd, Experian, Equifax and TransUnion (collectively "CRA's") and GMAC/OCWEN (referred to herein as "GMAC") within the applicable two-year period prior to filing his complaint.

GMAC's challenge of Byrd's claims arises from a misunderstanding of the relationship between GMAC, Liberty and CRA's. To fully grasp why Byrd has pled sustainable claims it is necessary to appreciate how Liberty's actions fall far outside industry standards with respect to a junior lienholder foreclosure where a senior lien exist. The standard industry practice[1] - a junior lienholder forecloses, the junior lien it will pay-off any senior liens or negotiate a settlement with the first lien holder, so that the junior lienholder assumes a first position. This is understandable because without this arrangement the junior lienholder has done nothing but place itself in the shoes of the borrower with a priority senior debt, which, if not paid would subject the junior lienholder to having its lien extinguished by a foreclosure of a senior debt.

Liberty started this process by paying off the 2nd mortgage that was then held by U.S. Bank. (replace with GMAC) but left the first mortgage in place that was also with GMAC. As previously discussed in the complaint and amended complaint this would have been a financial advantage to Liberty because, as a commercial lender, it was ineligible for the preferred interest rate Byrd received through Fannie Mae/Freddie Mac under their private lending program.

After the foreclosure, Liberty began communicating directly with GMAC and providing GMAC its corporate contact information so that any loan information would circumvent Byrd and be sent directly to Liberty. Keeping Byrd in the dark with respect to the status of the GMAC

---

[1] the plaintiff is confident that industry experts would testify as to standard industry practice.

debt. When the Byrd became aware that Liberty had not extinguish the first mortgage (which is unheard of in these types of transactions) and that Liberty was making financial transactions under Byrd's name and social security number, Byrd contacted GMAC and reported this unlawful activity in writing and verbally to GMAC as well as the CRA.

On or about March 21, 2017, Byrd continued to dispute the erroneous information. Byrd's disputes were acknowledged by a CRA on or about May 1, 2017 when Byrd received written confirmation of Byrd's 2017 disputes and an acknowledgment of his prior disputes. Unfortunately, he was informed by the CRA that there would be no changed in the reported status of the GMAC mortgage. *See, Byrd Affidavit.*

## II.  LEGAL ARGUMENT & AUTHORITIES.

### A.        Standards for Rule 12(b)(6) Motion to Dismiss.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." Casanova v. Ulibarri, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009)). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, this court may consider exhibits attached to the Complaint without converting the motion into one for summary judgment pursuant to Rule 56. See *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). To survive a motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft,* 556 U.S. at 678 (internal quotation marks omitted). A claim is plausible when the

plaintiff "pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id.

**B.      Plaintiff Has Properly Alleged and Pled a Claim for Violation of the Fair Credit
         Reporting Act.**

Defendant's argue that "Byrd does not allege, however, that he was making any

payments on the first mortgage loan on his property during the relevant time periods." [Motion at

P. 2 ¶ 3] As discussed above, this transaction presents a "unicorn" in junior lien foreclosures as

(1) the first mortgage was not paid off by Liberty during the foreclosure process, (2) Liberty did

not negotiate a buyout of GMAC's first position, (3) GMAC communicated all loan information

to Liberty to its corporate address, and (4) GMAC did not communicate any loan information to

Byrd.

Byrd was unaware that Liberty failed to clear all senior debt when they obtained

ownership of the property 2007. As discussed in each complaint and herein, GMAC never sent

Byrd a notice of default or a notice of acceleration of debt based upon Liberty's foreclosure.

As previously alleged[2] GMAC had direct knowledge that Liberty had assumed Byrd's

identity with respect to the first mortgage because GMAC held the second mortgage that was

paid in full by[3] Liberty shortly after the foreclosure. Only discovery will allow Byrd to receive

documents and evidence demonstrating the full extent to which GMAC and Liberty operated to

---

[2] without the benefit of discovery but upon information and belief GMAC directly communicated with Liberty and sent all loan information to Liberty's corporate address.

[3] *Liberty foreclosed on a loan it purchased from U.S. Bank that was 3rd mortgage line of credit and knew that it was a junior lender
behind two GMAC loans.

the detriment of Byrd.

GMAC correctly notes that Byrd did not have knowledge of the interaction between GMAC and Liberty because from the foreclosure forward, GMAC did not communicate with Byrd in writing or otherwise, but rather communicated with Liberty at their corporate address.

At no time did GMAC communicate with Byrd that the first mortgage obligation had not been extinguished during the foreclosure process, as is customary in junior lien foreclosure actions. If GMAC had given such notice, Byrd could have sought relief and recovered creditworthiness within 36 months.[4]

GMAC mischaracterizes Byrd's understanding of the status of the first mortgage by stating; "Byrd appears to be under the misperception that the foreclosure of his property by Liberty somehow removed his obligations on the first mortgage as well." [Motion at P. 3 ¶ 1]

Byrd understood the standard practice in the industry with respect to a junior lienholder foreclosure. He further understood that a third position Junior lienholder would not foreclose on and leave senior liens in place. This would place the Junior lienholder in no better position than it had without the foreclosure. This industry standard, coupled with GMAC's failure to send Byrd a notice of default or notice of acceleration of debt due to Liberty's foreclosure only confirmed Byrd's understanding that the foreclosing party and the first lienholder had entered into an arrangement to address the first lienholder's position.

GMAC states further that "Finally, Byrd alleges that he provided written disputes of his credit to credit reporting agencies on two dates April of 2016 and one date in May of 2016." [Motion at P. 3 ¶ 1] The accompanying affidavit as well as its exhibits evidence that Byrd

---

[4] This fact is solidly known by mortgage lenders certified by HUD, FNMA, FHLMC and VA.

unsuccessfully made continuing efforts to address this matter with GMAC up to and including 2017[5].

As set forth in Byrd's affidavit, as late as 2017, on one occasion, one of the CRA's and Byrd contacted Ocwen by telephone and after explaining the factual circumstances of Liberty's foreclosure and its inappropriate use of Byrd's personal financial information, GMAC failed to make any changes to the CRA reporting.

With respect to the misuse of Byrd's personal identifying information, [Motion at P. 4 ¶ 2] GMAC expects for Byrd to have all of the information contained in GMAC's files without the benefit of discovery in this case. It is more than plausible that GMAC provided mortgage interest documents (1098) to Liberty and to the United States Department of Treasury under Byrd's Social Security number. [6]

Regarding Social Security Administration, Byrd does not assert that GMAC's action prevented Byrd's claim with Social Security Administration, but that Liberty's corporate address was provided to the CRA's and in-turn used by Social Security Administration to establish screening security questions for online transactions. For example, Social Security Administration would ask, "Have had a mortgage loan?", "What was your address?". When Byrd would insert his address, an error would appear because he did not insert Liberty's address it used under Byrd's social security number with GMAC. By assuming Byrd's identity in this respect, created difficulty for Mr. Byrd to conduct in-person private matters with Social Security Administration

---

[5] as previously stated in the complaint and amended complaint GMAC/OCWEN failed to act on direct communication from Byrd that Liberty was using Byrd's Social Security number and other financial information to transact business with GMAC

[6] Form 1098 is a form filed with the Internal Revenue Service (IRS) that details the amount of interest and related expenses paid on a mortgage during the tax year. These expenses can be used as deductions on a U.S. income tax form, Schedule A, which reduces taxable income and the overall amount owed to the IRS.

and completely removed any possibility to conduct business online due to erroneous addresses under the security questions.

Remarkably, GMAC argues that "While Byrd's First Amended Complaint corrects his failure to plead that submitted his dispute first to the credit reporting agencies….., Byrd still fails to plead a viable claim for relief because it is inherent that the reporting was correct."

The argument totally disregards the sum and substance of Byrd's complaint. GMAC allowed and perpetuated Liberty's use of Byrd's identity to facilitate financial transactions that were reported to government agencies (Treasury, Social Security Administration and maybe others) and CRA's. As a result, of Liberty's 60, 90, 120 days late payment history, Byrd's credit score would decline. The inevitable result of a lower credit score is less favorable loan terms, higher interest payments and in some cases denial. When you factor in the effect of debt to income ratios the result is a double negative on your credit score.

As previously stated, it remains a conundrum what motivated Liberty to pay off one senior debt but not the other. Regardless, GMAC never informed Byrd of the loan status[7], thus depriving Byrd of any opportunity to cure the loan status.

GMAC states that "…to the extent Byrd attempts to allege a violation…failure to state facts establishing that he suffered actual damages…Defendants' conduct actually benefited Mr. Byrd …Mr. Byrd's obligation under the Note would have been higher." [Motion at P. 8 ¶ 1].

As a mortgage lender GMAC knows that payment history, debt to income ratio, foreclosures all directly affect borrower's ability to secure a mortgage loan.  By allowing Liberty to conduct financial transactions under the Social Security number of Byrd, and especially given

---

[7] Byrd provided all of his contact information to GMAC in 2012.

the erratic payment history of Liberty the natural consequence would impede Byrd's ability to secure future mortgages. As stated above, it deprived Byrd of any opportunity to address the first mortgage loan status. Keeping Byrd in the dark, did not benefit Byrd.

Interestingly GMAC argues that "….Byrd claims fails because he does not allege that incurred actual damages as a result of any investigation conducted by the Ocwen Parties ...Byrd only identifies one tangible fact that could qualify as actual damages- he applied for credit and was denied on several occasions, " the last of which occurred in 2015" [Motion at P. 8 ¶ 3].

If GMAC now acknowledges that it conducted an investigation, it would have only resulted from an inquiry from a CRA, which would have been prompted by Byrd's complaint. *See, Byrd's Affidavit attached hereto as Exhibit 1.* We are in a credit driven society. As previously discussed, debt-to-income ratios, late payment history deprives consumers of preferred credit terms and higher interest payments. The difference can result in thousands of dollars over the course of 30-year mortgage.

Byrd's FCR a claim does not fail as a result of the statute of limitation because GMAC and Liberty were communicating with each other through 2017, which Liberty sold the property and the GMAC note was paid. *See, Byrd's Affidavit attached hereto as Exhibit 1.*

**C.**   **Plaintiff Has Properly Alleged and Pled a Claim** for **Violation of the Right to Financial Privacy Act, 12 U.S.C. § 3401.**

GMAC claims that Byrd Has Not Pled A Viable Claim Under the RFPA [Motion at P. 9 ¶ 1 & 2] Defendants inaccurately assert that the Government only received Byrd's information from credit agencies not as loan servicers.

This court can take judicial notice that loan servicers are required by law to provide

mortgage interest statements to the United States Department of Treasury and to the borrower.

GMAC has not denied receiving payments from Liberty, so it is plausible that GMAC in turn provided 1098 mortgage interest statements. It is further plausible that since they maintained the note in Byrd's name that the mortgage interest statement was submitted to the United States Department of Treasury under Byrd's Social Security number, this transaction on its face makes GMAC culpable in submitting false information to a governmental agency. The statute defines government authority to mean an agency or department of the United States, or any officer, employee or agent thereof. 12 U.S.C. § 3401(3). The United States Department of Treasury certainly meets this definition. If the court allows this matter to proceed on its merits, Discovery will reveal that GMAC has mandatory reporting to multiple government agencies all of which are unknown to Byrd at this time.

**D.      Plaintiff Should be Granted Leave to File a Second Amended Complaint.**

Justice Requires Leave to Amend Pursuant to Rule 15(a).

Federal Rule of Civil Procedure 15(a) provides that, after a responsive pleading has been served, a party may amend its pleading "only by leave of court or by written consent of the adverse party." "The . . . Tenth Circuit has emphasized that '[t]he purpose of [Rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.' *B.T. ex rel. G.T. v. Santa Fe Pub. Schs*., 2007 U.S. Dist. LEXIS 33912, 2007 WL 1306814, at *2 (D.N.M. 2007) (Browning, J.) (quoting *Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1204 (10th Cir. 2006)). The Rule specifies that "leave shall be freely given when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure

deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

 Byrd's request to file a Second amended Complaint does not bring in new claims, but merely provides supporting documentation in the form of Mr. Byrd's affidavit and attached exhibits in support of the factual bases of the original and First Amended Complaint.

While the Second Amended Complaint does provide additional details, all of the topics are ones which have previously been identified in the case.

### III.  CONCLUSION

**WHEREFORE**, for the reasons stated above, GMAC's Rule 12(b)(6) motion to dismiss Plaintiff's claims should be denied, and Plaintiff respectfully request that his motion for leave to amend the complaint in this action be granted and for such other and further relief as the Court deems appropriate.

**DATED** this 10th day of January 2020.

Respectfully Submitted,

 /s/ *Joseph G. Webb*
Joseph G. Webb, Atty. No. 21425
Webb Law Group, LLC
925 S. Niagara St., #240
Denver, Colorado 80224-1604
Tel: 303-861-5500
Fax: 303-942-3682
joe@webblawllc.com
*Attorney for Trenson L. Byrd Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2020, I electronically filed the foregoing "**PLAINTIFF'S RESPONSE TO GMAC RULE 12(b)(6) MOTION TO DISMISS**"  with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:


Cynthia Lowery-Graber
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Telephone: (303) 861-7000
Facsimile: (303) 866-0200
Email: cynthia.lowery-graber@bclplaw.com
*Attorneys for Defendants GMAC Mortgage,*
*LLC and Ocwen Loan Servicing, LLC*

Adrian P. Castro
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
acastro@fwlaw.com
*Attorneys for Defendant Liberty Asset Management, LLC*


*/s/ Joseph G. Webb*
