**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Case No. 1:19-cv-00651-DDD-STV

TRENSON L. BYRD,

    Plaintiff,

v.

GMAC MORTGAGE, LLC,
OCWEN LOAN SERVICING, and
LIBERTY ASSET MANAGEMENT, LLC,

    Defendants.

**ORDER GRANTING MOTIONS TO DISMISS
AMENDED COMPLAINT**

Plaintiff Trenson Byrd alleges that Defendants made, and at times failed to make, mortgage loan payments in his name, causing inaccurate reporting to consumer credit bureaus and misuse of his private financial information. The court previously dismissed all claims but gave Mr. Byrd leave to amend three of them. (Doc. 24.) He amended two, and Defendants filed motions to dismiss the amended complaint, in which they again assert the claims are barred by relevant statutes of limitations and fail to plausibly establish that relief may be granted. (*See* Am. Compl., Doc. 26; GMAC/Ocwen Mot. to Dismiss, Doc. 28; Liberty Mot. to Dismiss, Doc. 29.) Because Mr. Byrd's remaining claims are either time-barred or fail to state viable claims, the motions are **GRANTED**.

## ALLEGATIONS

The following allegations are taken from the amended complaint and are treated as true for purposes of assessing the motion to dismiss. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013).

Mr. Byrd is the former owner of property located in Centennial, Colorado, which was subject to a first mortgage loan he obtained from GMAC Mortgage, LLC, a second mortgage from Liberty Asset Management, LLC, and a third mortgage from US Bank, N.A. On or about July 3, 2007, Liberty prosecuted a mortgage foreclosure action, in which it paid off the US Bank loan. After the foreclosure, Mr. Byrd surrendered the property to Liberty.

"In or about February 2012 [Mr.] Byrd became aware that Liberty was making payments to GMAC in Byrd's name without authorization. During that same time frame, [Mr.] Byrd advised GMAC that Liberty, without authorization was making monthly first mortgage payments in his name." (Am. Compl. ¶ 3; *see also* Feb. 29, 2012 Letter to GMAC, Doc. 26-2.) He alerted GMAC, but he received no response. He found out that the loan had been sold to Ocwen, which told him that his communication with GMAC was in the file.

"Over the years," Mr. Byrd attempted loan applications to acquire residential properties. "After being rejected, the last of which occurred in 2015, he determined that the reason for rejecting his credit applications was based upon credit bureau report showing (1) that he had a loan with GMAC thus, misreporting his debt-to-income ratio, and (2) that there were several late payments, some more than 90 days." (Am. Compl. ¶ 7.)

In "or about March 2017, Mr. Byrd provided the consumer credit bureaus with a written objection the [sic] erroneous credit entry on his credit report from GMAC/Ocwen, which is based upon Liberty's illegal use of Mr. Byrd's identity." (*Id.* ¶ 9.) On or about May 18, 2018, Mr. Byrd caused a letter to be sent to Liberty and advised them that the company did not have permission to use his identity to continue making payments to GMAC/Ocwen. On or about the same date, Mr. Byrd also advised GMAC/Ocwen that Liberty did not have his consent to use his personal information to make payments on the mortgage account held by GMAC/Ocwen in Mr. Byrd's name. (*Id.* ¶ 11.)

## PROCEDURAL HISTORY

On November 28, 2018, Mr. Byrd filed this case in state court (*see* Doc. 3), and it was removed here (Doc. 1). On November 11, 2019, following motions to dismiss to which Mr. Byrd did not respond, the court dismissed the complaint, partly with prejudice. (*See* Doc. 24.) Mr. Byrd filed an amended complaint, re-asserting claims for violations of the Fair Debt Recording Act, 15 U.S.C. § 1681s-2 (Claim One); and the Right to Financial Privacy Act, 12 U.S.C. § 3401, et seq. (Claim Four). He subsequently withdrew Claim One against Liberty. (*See* Doc. 37, at 1.)

## ANALYSIS

Defendants assert that both remaining claims are time-barred or, if not, fail to state viable causes of action. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but the rule calls for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible

on its face." *Id.* at 570. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009). Although the statute of limitations is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

### A. Fair Credit Recording Act (Claim One)

In its first dismissal order, the court warned Mr. Byrd that "his FCRA count appears to be time-barred." (Doc. 24, at 5.) An action to enforce liability under the FCRA must be brought within either five years from the date of the violation or two years of the discovery of the violation, whichever is earlier. 15 U.S.C. § 1681p(1). As the court surmised, since Mr. Byrd "discovered alleged improper reporting in 2015, at the latest, Mr. Byrd's FCRA claims, to the extent that there have not been repeated, recent violations subject to proper notice by a credit reporting agency, are untimely." (Doc. 24, at 5.)

Mr. Byrd, in the amended complaint, affirms the dates he discovered the alleged violations by GMAC/Ocwen but adds that he continued to make unsuccessful efforts to address this matter through 2017. (Doc. 38, at 5–6; *see also id.* at 2 ("The Byrd claims are not time-barred under the applicable statute of limitations because there was communication between the Byrd, Experian, Equifax and TransUnion [ ] and GMAC/OCWEN [ ] within the applicable two-year period prior to filing his complaint.").)

Mr. Byrd thus appears to argue that his deadline was somehow tolled by his ongoing complaints. The FCRA contains no tolling provision, though it used to. *See* Pub. L. 108-159, Title I, § 156, Dec. 4, 2003, 117 Stat. 1968 (removing tolling exception that applied when a defendant "materially and willfully misrepresented any information . . . material to the establishment of the defendant's liability"). Now, as relevant here, the statute concerns only the "date of discovery." *See Toney v. GMAC Mortg. Corp.*, No. 06-CV-01912-MSK-CBS, 2008 WL 697367, at *2 (D. Colo. Mar. 12, 2008) (dismissing on statute of limitations grounds despite the previous tolling provision).

Mr. Byrd's attempts at remediation with Defendants and the reporting agencies do not alter the date of his discovery, and thus the date the statute of limitations began to run. The amended complaint contains no new allegations of any violations about which Mr. Byrd was not aware by 2015 (and, more likely, by 2012). (*See generally* Am. Compl.) And the credit-reporting documents attached to the amended complaint—which he included to satisfy his earlier failure to allege that Defendants were put on notice by a credit agency (*see* Doc. 24, at 4–5)—are dated April 26, 27, and 29, 2016, showing that he received this information *again* more than two years before he filed this case on November 28, 2018 (*see* Docs. 26-4, 26-5,[1] 26-6; *see also* Am Compl. ¶ 28 ("On April 29, 2016, May 18, 2016, April 27, 2016 [Mr.] Byrd provided written request and notice to Credit Reporting Agencies ("CRA's") disputing incorrect information from Defendants.")). His FCRA claim is therefore time-barred.

---

[1] The credit report in Doc. 26-5 appears to show the GMAC/Ocwen loan terminating in 2013, although its missing page 4 (where the currency of payments would be shown).

### B. Right to Financial Privacy Act (Claim Four)

The RFPA prohibits financial institutions from providing the government access to certain financial records. 12 U.S.C. § 3402; *Anderson v. La Junta State Bank*, 115 F.3d 756, 758 (10th Cir. 1997) ("The RFPA was enacted in response to a pattern of government abuse in the area of individual privacy and was intended 'to protect the customers of financial institutions from unwarranted intrusion into their records while at the same time permitting legitimate law enforcement activity by requiring federal agencies to follow' established procedures when seeking a customer's financial records." (quoting *Neece v. IRS*, 922 F.2d 573, 575 (10th Cir. 1990)). The court, in its earlier order, noted that there were "no allegations that Mr. Byrd's financial information was ever supplied to a governmental entity, so he has failed to state a claim under the RFPA, unless he can adequately allege that his information was so supplied." (Doc. 24, at 7.)

There are none now either. Mr. Byrd merely alleges that the Social Security Administration obtained his credit reports from Equifax, which contained Liberty's address listed as his own. (Am. Compl. ¶¶ 48–50.)[2] Apparently, this has made it difficult for him to collect disability benefits and otherwise interact with the SSA online because his address has been "red flag[ged]." (*Id.* ¶¶ 50–51.)

Equifax, a private reporting agency, isn't a financial institution under the RFPA. *See* 12 U.S.C. § 3401 (defining "financial institution"

---

[2] Two of these allegedly incorrect addresses show as "Reported: 04/2016" (Doc. 26-4, at 2) which undermines Defendants' argument that the RFPA's three-year statute of limitations bars Mr. Byrd's claims against them.

to include banks, card issuers, loan and trust companies, and credit unions); *Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.*, 717 F.3d 545, 551 (7th Cir. 2013) (noting the types of entities covered by the statute "provide financing" as "a core function and purpose of such businesses"). While certain of Equifax's reporting practices, as alleged here, are concerning, it isn't a defendant here. And Mr. Byrd doesn't allege that the actual Defendants provided financial (or any) information to the SSA in violation of the RFPA.[3] He merely implies that Defendants made reports to Equifax which, in turn, were reviewed by the government. Reports by lenders to reporting agencies are not governed or prohibited by the RFPA, even if they later fall into government hands. *See Stein v. Bank of Am. Corp.*, 540 F. App'x 10, (Mem)–11 (D.C. Cir. 2013) (where "plaintiffs do not allege that Bank of America 'provid[ed]' their financial records 'to' the government. Rather, they 'believe' and 'suspect' that the bank sent customers' financial records to service centers abroad, which they allege may have exposed the records to possible surveillance by the U.S. government").

### C. Amendment

The last question is therefore whether to dismiss Mr. Byrd's claim with prejudice. Generally, the "court should freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a)(2).

---

[3] Mr. Byrd argues for the first time in his responses to the motions to dismiss that Defendants may have submitted false mortgage interest statements to the United States Department of Treasury. (Doc. 37, at 4; Doc. 38, at 9.) Though that theory doesn't appear in the amended complaint, the court agrees with Defendants that filing tax information with the U.S. Department of Treasury does not involve the improper disclosure or access by a governmental authority of financial records or information contained in the financial records.

The allegations and documents—even those improperly contained in his responses—have failed to support plausible claims, and the court, in its prior order, already addressed the same deficiencies that continued through to the amended complaint. Because Mr. Byrd has been unable to correct course with anything other than his admitted conjecture, the court finds that amendment would be futile. Mr. Byrd's frustrations with the seemingly byzantine course his former mortgages have taken in the financial world in which Defendants operate is understandable. But they do not amount to cognizable legal claims. The claims are therefore dismissed with prejudice.

## CONCLUSION

The motions to dismiss the amended complaint (Docs. 28, 29) are **GRANTED**. The remaining claims are **DISMISSED WITH PREJUDICE**.

Dated: August 7, 2020.    BY THE COURT:

_____
Daniel D. Domenico
United States District Judge